1   Jeff Willis (NV Bar No. 4797)
    Mark E. Konrad (NV Bar No. 4462)
2   Charles E. Gianelloni (NV Bar No. 12747)
    SNELL & WILMER L.L.P.
3   3883 Howard Hughes Parkway, Suite 1100
    Las Vegas, NV 89169
4   Telephone: (702) 784-5200
    Facsimile:  (702) 784-5252
5   Email: jwillis@swlaw.com
           mkonad@swalw.com
6          cgianelloni@swlaw.com
    *Attorneys for Fiasco Enterprises, Inc.*
7

8                    **UNITED STATES DISTRICT COURT**

9                         **DISTRICT OF NEVADA**

10  OSVALDO ARIAS,                          Case No.

11                            Plaintiff,

12        v.                                **DEFENDANT FIASCO ENTERPRISES,**
                                            **INC.'S NOTICE OF REMOVAL OF**
13  FIASCO ENTERPRISES, INC.; DOES I-X,     **OSVALDO ARIAS' COMPLAINT,**
    inclusive; and ROE CORPORATIONS I-X,    **PURSUANT TO 28 U.S.C. §§ 1332, 1441**
14  inclusive,                              **AND 1446**

15                            Defendants.

16  **TO:    THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE**

17  **DISTRICT OF NEVADA:**

18          PLEASE TAKE NOTICE that Defendant Fiasco Enterprises, Inc. ("Fiasco"), hereby

19  removes the instant action to the United States District Court for the District of Nevada (the

20  "District Court"), from Nevada's Eighth Judicial District Court in and for Clark County (the

21  "State Court"), pursuant to 28 U.S.C. §§ 1332, 1441 and 1446.

22          1.      On April 12, 2016, Plaintiff Osvaldo Arias filed a Complaint initiating the instant

23  action.  Fiasco is the only named defendant in the Complaint.  A true and correct copy of

24  Plaintiff's Complaint is attached hereto as **Exhibit 1**.  Fiasco was served with the Complaint and

25  Summons on April 22, 2016.  No further proceedings have been had in the State Court.

26          2.      This Court has jurisdiction over the instant action pursuant to 28 U.S.C. § 1332(a)

27  because:  (i) this action is a civil action pending within the jurisdiction and territory of the United

28

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 HOWARD HUGHES PARKWAY, SUITE 1100
LAS VEGAS, NEVADA 89169
(702)784-5200

States District Court for the District of Nevada; (ii) the action in intervention is between citizens of different states; (iii) the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs; and (iv) all procedural requirements for removal are met.

3.    ***There is Complete Diversity of Citizenship Here.***    Plaintiff is an individual residing in Clark County, Nevada. (Compl. ¶6.) Fiasco is a foreign corporation organized pursuant to Arizona law. (*See* Compl. ¶2.) Fiasco's principal place of business is in Arizona. Under 28 U.S.C. § 1332(c)(1), a corporation is a citizen of any state in which it has been incorporated and of any state where it has its principal place of business. Thus, there is complete diversity of citizenship.

4.    ***The Amount in Controversy Exceeds $75,000.***    The instant action seeks declaratory relief related to the redemption of Plaintiff's shares in Fiasco. (Compl. ¶¶47, 50-60.) Based on the number of shares held by Plaintiff and the per-share value as calculated pursuant to the Fiasco Enterprises Inc. Buy-Sell/Stock Redemption Agreement, the amount in controversy exceeds $75,000. (Compl., Ex. 2.) Inasmuch as the parties are disputing the redemption rights of stock which is valued in excess of $75,000 as well as other matters, the action satisfies the amount in controversy requirement under 28 U.S.C. § 1332.

5.    ***Fiasco has Timely Filed This Notice of Removal.***    As set forth in paragraph 1, Plaintiff initiated this action less than one year ago. Moreover, Plaintiff filed his Complaint on April 12, 2016 and served Fiasco on April 22, 2016. Thus, there can be no dispute that Fiasco has timely filed the instant Notice of Removal (i.e., within the 30-day period prescribed by 28 U.S.C. § 1446(b)(1), and less than one year after the action was initiated, as required by 28 U.S.C. § 1446(c)(1)).

6.    ***The Only Named Defendant Consents to Removal.***    There are no other named defendants named in the Complaint. The remaining defendants are fictitiously named. "[T]he citizenship of defendants sued under fictitious names shall be disregarded." 28 U.S.C. § 1446(b)(1). Thus, as required by 28 U.S.C. § 1446(b)(2), "all defendants who have been properly joined and served [have] join[ed] in or consent[ed] to the removal of the action."

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 HOWARD HUGHES PARKWAY, SUITE 1100
LAS VEGAS, NEVADA 89169
(702)784-5200

24042797

7. **Notice to the State Court and All Adverse Parties**. Fiasco will give notice of this removal to the adverse party in the action and to the State Court promptly after the filing of the instant Notice of Removal in compliance with the requirements of 28 U.S.C. § 1446(d).

8. **All Pleadings Served in Fiasco Have Been Attached**. The only pleadings served by Plaintiff on Fiasco in the action have been the Complaint and summons. A true and correct copy of the summons is attached as **Exhibit 2**.

9. **This Notice Complies with Fed. R. Civ. P. 11**. This Notice of Removal is hereby signed pursuant to Fed. R. Civ. P. 11(a).

10. Accordingly, as Fiasco has complied with all applicable terms of 28 U.S.C. § 1446, it hereby removes this action from the State Court to the District Court, and it hereby requests that further proceedings be conducted in the District Court as provided by law.

DATED this 6th day of May 2016.

SNELL & WILMER L.L.P.

By: _____
Jeff Willis (NV Bar No. 4797)
Mark E. Konrad (NV Bar No. 4462)
Charles E. Gianelloni (NV Bar No. 12747)
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, NV 89169
Telephone: (702) 784-5200
Facsimile:  (702) 784-5252
*Attorneys for Fiasco Enterprises, Inc.*

24042797

**CERTIFICATE OF SERVICE**

I hereby certify that on May 6, 2016, I electronically filed the foregoing **DEFENDANT FIASCO ENTERPRISES, INC.'S NOTICE OF REMOVAL OF OSVALDO ARIAS' COMPLAINT, PURSUANT TO 28 U.S.C. §§ 1332, 1441 AND 1446** with the Clerk of Court for the U.S. District Court, District of Nevada by using the Court's CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

I further certify that I have mailed the foregoing document by First-Class Mail, postage fully prepaid, to the following:

Erik W. Fox, Esq.
MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, NV 89145
*Attorneys for Plaintiff*


DATED this 6th day of May 2016.

An Employee of Snell & Wilmer L.L.P.

- 4 -

24042797

# EXHIBIT 1

# EXHIBIT 1

Electronically Filed
04/12/2016 03:18:19 PM

**CLERK OF THE COURT**

1   **Marquis Aurbach Coffing**
    Erik W. Fox, Esq.
2   Nevada Bar No. 8804
    10001 Park Run Drive
3   Las Vegas, Nevada 89145
    Telephone: (702) 382-0711
4   Facsimile: (702) 382-5816
    efox@maclaw.com
5     Attorneys for Plaintiff

6                           **DISTRICT COURT**

7                       **CLARK COUNTY, NEVADA**

8   OSVALDO ARIAS,

9                           Plaintiff,        Case No.: A-16-734939-C
                                              Dept. No.:  XXVIII
10      vs.

11  FIASCO ENTERPRISES, INC.; DOES I through   **Arbitration Exemption Requested:**
    X, inclusive; and ROE CORPORATIONS I       Declaratory Relief Requested
12  through X, inclusive,

13                          Defendants.

14

15                           **COMPLAINT**

16      Plaintiff OSVALDO ARIAS (hereinafter "Plaintiff") by and through his attorneys of

17  record, the law firm of Marquis Aurbach Coffing, alleges and complains as follows:

18                           **PARTIES**

19      1.      Plaintiff Osvaldo Arias ("Arias") is and was at all times relevant herein a

20  Shareholder of Fiasco Enterprises, Inc.

21      2.      Defendant, Fiasco Enterprises, Inc. ("Fiasco") is and was at all times relevant

22  herein, an Arizona corporation, a foreign corporation authorized by the Nevada Secretary of

23  State to do business in Nevada, and which is conducting business in Clark County, Nevada.

24      3.      The names and capacities, whether individuals, corporate, associate or otherwise

25  of Defendants named herein as DOE and ROE CORPORATION are unknown or not yet

26  confirmed.  Upon information and belief, said DOE and ROE CORPORATION Defendants are

27  responsible for damages suffered by Plaintiff and, therefore, Plaintiff sues said Defendants by

28  such fictitious names.  Plaintiff will ask leave to amend this Complaint to show the true names

MAC:14383-001 2756955_2 4/12/2016 2:58 PM

*MARQUIS AURBACH COFFING*
*10001 Park Run Drive*
*Las Vegas, Nevada 89145*
*(702) 382-0711 FAX: (702) 382-5816*

1   and capacities of each DOE and ROE CORPORATION Defendant at such time as the same has

2   been ascertained.

### JURISDICTION AND VENUE

4       4.    This Court has subject matter jurisdiction over claims that are not within the

5   subject matter jurisdiction of the Justice Court pursuant to Article 6, Section 6.1 of the Nevada

6   Constitution and Declaratory Relief is not within the subject matter jurisdiction of the Justice

7   Court.

8       5.    This Court has personal jurisdiction because Clark County, Nevada is the judicial

9   district in which a substantial part of the events or omissions giving rise to the claims set forth

10   herein occurred.

11       6.    Venue is proper in Clark County Nevada because the Defendants reside in Clark

12   County Nevada.

### GENERAL ALLEGATIONS

14       7.    Plaintiff, Arias, was part owner in a transportation, warehousing and logistics

15   company called On the Go Leasing, LLC, dba Dimensions Delivers ("Dimensions").

16       8.    Defendant, Fiasco, was a shell company owned by Kim Sheridan-Rohasek ("Kim

17   Rohasek").

18       9.    Kim Rohasek previously worked for a competing transportation and logistics

19   company and, upon information and belief, was subject to a non-compete or other restrictive

20   trade agreement.

21       10.    Based upon a previous working and personal relationship, Kim Rohasek was

22   contacted to become a consultant to Plaintiff, Arias' Company, Dimensions.

23       11.    Kim Rohasek acted as a consultant to Dimensions during a period between 2014-

24   2015.

25       12.    Kim Rohasek was offered the opportunity to become and owner in Dimensions,

26   but terms could not ultimately be reached.

27       13.    In May 2015, group of partners, including Arias, filed a fictitious name statement

28   on behalf of Fiasco showing that it was doing business as Energy Transport Logistics.

MAC:14383-001 2756955_2 4/12/2016 2:58 PM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

14. Also in May 2015, Kim Rohasek, on behalf of Fiasco, engaged the Arizona law firm of Bosse Rollman and Funk, LLP, ("Bosse") for the purpose of the conversion of Fiasco's corporate status related to the formation of Energy Transport Logistics.

15. As part of this transaction, new Articles of Incorporation and other related corporate documents were prepared by Bosse.

16. Bylaws for Fiasco were prepared and finalized.

17. A true, correct and authentic copy of the Fiasco Bylaws is attached as **Exhibit 1.**

18. A Buy-Sell/Stock Redemption Agreement (Buy-Sell) was prepared by Bosse and executed by the Shareholders of Fiasco.

19. A true, correct and authentic copy of the Buy-Sell is attached as **Exhibit 2.**

20. Four shareholders with voting rights were established in the Buy-Sell and by virtue of the Bylaws: William Sheridan, Pablo Franco, Arias and Matthew Rohasek.

21. William Sheridan is the brother of Kim Rohasek and Matthew Rohasek is her husband.

22. Collectively Sheridan and Matthew Rohasek control 50% of the voting interest in Fiasco.

23. Kim Rohasek was established as Chief Executive Officer.

24. Kim Rohasek controls her husband and brother's voting interest.

25. Pablo Franco and Arias control the other 50% voting interest in Fiasco.

26. The Buy-Sell provides in Article III that the stock of the shareholders in Fiasco may only be redeemed upon death, permanent disability, withdrawal or full retirement.

27. Each term of death, permanent disability and withdrawal and full retirement are defined in the Buy-Sell.

28. In December 2015, an agreement was reached wherein Fiasco would also purchase the entire Membership Interest held in Dimensions.

29. Fiasco became the Manager of Dimensions.

30. Fiasco operates facilities in a variety of locations including, Arizona, California and Las Vegas, Nevada.

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:14383-001 2756955_2 4/12/2016 2:58 PM

31.   Kim Rohasek, in her capacity as CEO of Fiasco, was aware that Arias utilized the docks of the Las Vegas facility for small other legacy operations as he had done while he still worked for Dimensions.

32.   Kim Rohasek discussed these other small legacy operations in September 2015 with Arias.

33.   Upon the conversion of Dimensions to Energy in January 2016, Kim Rohasek did not raise the issue regarding the small other legacy operations.

34.   Kim Rohasek had made Arias many unfulfilled promises relating to his post-Dimensions income and she failed to deliver on each of these promises.

35.   The relationship between Kim Rohasek and Arias began to fracture.

36.   On March 14, 2016, Kim Rohasek revisited the issue of the small other legacy operations with Arias.

37.   She asked Arias if he was still taking money from the operations.  Arias replied yes, and, despite the fact she was aware and had remained silent on the issue for months, she attempted to create an issue out of the situation.

38.   Thereafter, Kim Rohasek stated she was taking the issue to the Board of Directors, of which Arias was a part.

39.   A telephone conference regarding the termination of Arias as a Shareholder and Employee was held and Kim Rohasek refused to permit Arias to vote regarding the issue.

40.   She stated Arias could not vote because the issue was about Arias.

41.   The Bylaws of Fiasco make no mention of excluding a shareholder from voting rights because the issue is about them.

42.   Kim Rohasek took such action despite the fact she has no voting authority and the fact that Arias, as a Shareholder and Director, was entitled to participate in such Company voting events.

43.   Thereafter, Kim Rohasek told Arias his employment was terminated and that she wanted him to come with her to a bank in Las Vegas to sign paperwork terminating his interest in Fiasco as well.

Page 4 of 6

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

44. Arias denied the request.

45. On April 4, 2016, a telephonic meeting of the voting Shareholders of Fiasco was held for the purpose of voting on the termination of Arias as an employee and removing him as a Director.

46. Fiasco voted to remove Arias a Director with the intent to deprive him of his voting interest in Fiasco.

47. Arias has recently learned of the intent by Kim Rohasek and Fiasco to force a buy-out of Arias' shares pursuant to the Buy-Sell.

48. The Buy-Sell does not authorize or permit the forcing of redemption of Arias' stock in Fiasco, where Fiasco, and not Arias, terminated his employment.

## CLAIM FOR RELIEF

### (Declaratory Relief)

49. Plaintiff repeats and realleges the paragraphs as though fully stated herein.

50. An actual and justiciable controversy has arisen between Arias and Fiasco regarding his right to continue as an owner of shares in Fiasco.

51. The Buy-Sell permits redemption of an owner's shares only in the event of death, permanent disability and withdrawal and full retirement.

52. Arias did not die, become permanently disabled or retire.

53. In Article I(A), the Buy-Sell defines "'Withdrawal' shall be deemed to occur upon a Shareholder's termination of employment with the Company for reason other than permanent disability, full retirement or death."

54. The Buy-Sell must be construed in Arias' favor as it does not contain a provision that it was mutually drafted.

55. Arias did not elect to withdraw from Fiasco and Fiasco cannot force the redemption of his shares.

56. The Court has the power to declare rights and other legal remedies between parties.

MAC:14383-001 2756955_2 4/12/2016 2:58 PM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

57.   Because of the uniqueness of the interests at issue, Plaintiff lacks an adequate remedy at law.

58.   The controversy is ripe for judicial determination.

59.   Arias is entitled to a declaration from this Court that unless he elects to "withdraw" from Fiasco as defined in the Buy-Sell, Fiasco may not force the redemption of his interest in the company.

60.   Arias is also entitled to a declaration from this Court that he is entitled to involvement as a Director with full voting rights based upon his shareholder interest in Fiasco.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief against Defendant:

1.   For a declaration from this Court that Arias is entitled to a declaration from this Court that unless he elects to "withdraw" from Fiasco as defined in the Buy-Sell, Fiasco may not force the redemption of his stock or other interest in the company and that Arias maintains his voting rights in Fiasco.  The declaration should also declare the vote as improper.

2.   For an award of reasonable attorney fees and costs of suit; and

3.   For any further relief as the Court deems to be just and proper.

Dated this 12th day of April, 2016.

MARQUIS AURBACH COFFING


By    /s/ Erik W. Fox
Erik W. Fox, Esq.
Nevada Bar No. 8804
10001 Park Run Drive
Las Vegas, Nevada  89145
Attorney(s) for Plaintiff

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:14383-001 2756955_2 4/12/2016 2:58 PM

# EXHIBIT "1"

# BYLAWS

## OF

## FIASCO ENTERPRISES INC.

### ARTICLE I

### OFFICES

A.    <u>Principal Office</u>.  The principal office of the corporation shall be its known place of business.

B.    <u>Other Offices</u>.  The corporation may also maintain offices at such other place or places, either within or without the State of Arizona, as may be designated from time to time by the board of directors, and the business of the corporation may be transacted at such other offices with the same effect as that conducted at the principal office.

### ARTICLE II

### SHAREHOLDERS

A.    <u>Shareholders' Meetings</u>.  All meetings of shareholders shall be held in Pima County, Arizona, or at such other place as may be fixed from time to time by the board of directors; or in the absence of direction by the board, by the president or secretary of the corporation, as shall be stated in the notice of the meeting or in a duly executed waiver of notice thereof.

B.    <u>Annual Meetings</u>.  The annual meeting of shareholders shall be held on the third Friday of December, if not a legal holiday, and if a legal holiday, then on the next secular day following, or at such other date and time as shall be designated from time to time by the board of directors and stated in the notice of meeting.  At the annual meeting, shareholders shall elect a

board of directors and transact such other business as may properly be brought before the meeting.

C.    Notice of Annual Meeting.  Written notice of the annual meeting stating the place, date and hour of the meeting shall be given to each shareholder of record entitled to vote at such meeting not less than ten (10) nor more than sixty (60) days before the date of the meeting. Shareholders entitled to vote at the meeting shall be determined as of four o'clock in the afternoon on the day before notice of the meeting is sent.

D.    List of Shareholders.  The officer who has charge of the stock ledger of the corporation shall prepare and make, at least ten (10) days before every meeting of shareholders, a complete list of the shareholders entitled to vote at the meeting, arranged in alphabetical order, and showing the address and the number of shares registered in the name of each shareholder. Such list shall be open to the examination of any shareholder, for any purpose germane to the meeting, during ordinary business hours, for a period of at least ten (10) days prior to the meeting, either at a place within the city where the meeting is to be held, which place shall be specified in the notice of the meeting, or, if not so specified, at the place where the meeting is to be held.  The list shall also be produced and kept at the time and place of the meeting during the whole time thereof, and may be inspected by any shareholder present.

E.    Special Meetings of Shareholders.  Special meetings of the shareholders, for any purpose or purposes, unless otherwise proscribed by statute or by the Articles of Incorporation, may be called by the president, and shall be called by the president or secretary at the request in writing of a majority of the board of directors, or at the written request of the holders of not fewer than ten percent (10%) of all the outstanding shares entitled to vote at the meeting.  Such request shall state the purpose or purposes of the proposed meeting.

- 2 -

F.     <u>Notice of Special Meetings</u>.  Written notice of a special meeting stating the place, date and hour of the meeting and the purpose or purposes for which the meeting is called shall be given not less than ten (10) nor more than sixty (60) days before the date of the meeting to each shareholder of record entitled to vote at such meeting.  Business transacted at any special meeting of shareholders shall be limited to the purposes stated in the notice.  Shareholders entitled to vote at the meeting shall be determined as of four o'clock in the afternoon on the day before notice of the meeting is sent.

G.     <u>Quorum and Adjournment</u>.  The holders of fifty-one percent (51%) of the shares issued, outstanding and entitled to vote at the meeting, present in person or represented by proxy, shall constitute a quorum at all meetings of the shareholders for the transaction of business, except as otherwise provided by statute or by the Articles of Incorporation.  If, however, such quorum shall not be present or represented at any meeting of the shareholders, the shareholders entitled to vote at the meeting, present in person or represented by proxy, shall have power to adjourn the meeting to another time or place, without notice other than announcement at the meeting at which adjournment is taken, until a quorum shall be present or represented.  At such adjourned meeting at which a quorum shall be present or represented, any business may be transacted which might have been transacted at the meeting as originally notified.  If the adjournment is for more than thirty (30) days, or if after the adjournment a new record date is fixed for the adjourned meeting, a notice of the adjourned meeting shall be given to each shareholder of record entitled to vote at the meeting.

H.     <u>Voting</u>.  Except for matters requiring cumulative voting, each shareholder entitled to vote shall be entitled to one (1) vote or corresponding fraction thereof, in person or by proxy for each share of stock or fraction thereof held by such shareholder.  Shareholders entitled to

- 3 -

vote at an election for directors shall be entitled to vote cumulatively; all other questions shall be decided by vote of fifty-one percent (51%) of the shares present, except as otherwise provided by the Articles of Incorporation, these Bylaws or the laws of the State of Arizona.  Upon the demand of any shareholder, the vote for directors and upon any question before any meeting shall be by ballot.

I.      Proxies.   At all meetings of shareholders, a shareholder may vote by proxy executed in writing by such shareholder or by his duly authorized attorney in fact.   No instrument appointing a proxy shall be valid after the expiration of eleven (11) months from the date of its execution.  Unless otherwise required by law, all questions concerning the validity or sufficiency of the proxies or any of them shall be decided by the secretary.

J.      Action Without Meeting.   Any action required or permitted to be taken at any annual or special meeting of shareholders may be taken without a meeting, without prior notice and without a vote, if a consent in writing, setting forth the action so taken, shall be signed by the holders of all of the outstanding shares entitled to vote with respect to the subject matter of the action.  The shareholders may agree in writing to allow shareholder action without a meeting by less than all the shareholders.

K.      Waiver of Notice.   Attendance of a shareholder at a meeting shall constitute waiver of notice of such meeting, except when such attendance at the meeting is for the express purpose of objecting to the transaction of any business because the meeting is not lawfully called or convened.   Any shareholder may waive notice of any annual or special meeting of shareholders by executing a written waiver of notice either before or after the time of the meeting.

- 4 -

## ARTICLE III

## DIRECTORS

A.    Number.  The number of persons who shall constitute the board of directors shall be set by the shareholders at their annual meeting, or a special meeting called for that purpose. The directors shall be elected at the annual meeting of the shareholders, or at a special meeting called for that purpose, except as provided in paragraph B of this Article, and each director elected shall hold office until his successor is elected and qualified.  Directors need not be shareholders.

B.    Vacancies.   Vacancies and newly created directorships resulting from any increase in the authorized number of directors may be filled by the affirmative vote of a majority of the remaining directors then in office, even though less than a quorum, or by a sole remaining director, and the directors so chosen shall hold office until the next annual election and until their successors are duly elected and qualified, unless sooner displaced.  If there are no directors in office, then an election of directors may be held in the manner provided by statute.

C.    Powers.  The business and affairs of the corporation shall be managed by its board of directors, which may exercise all such powers of the corporation and do all such lawful acts as are not prohibited by statute, the Articles of Incorporation, or these Bylaws.

D.    Place of Meetings.  The board of directors of the corporation may hold meetings, both regular and special, either within or without the State of Arizona.

E.    Annual Meetings.  The first meeting of each newly elected board of directors shall be held immediately following the annual meeting of shareholders and in the same place as the annual meeting of shareholders, and no notice to the newly elected directors of such meeting shall be necessary in order legally to hold the meeting, providing a quorum shall be present.  In

- 5 -

the event such meeting is not held, the meeting may be held at such time and place as shall be specified in a notice given as hereinafter provided for special meetings of the board, or as shall be specified in a written waiver by all of the directors.

F.     Regular Meetings.   Regular meetings of the board of directors may be held without notice at such time and at such place as shall from time to time be determined by the board.

G.     Special Meetings.   Special meetings of the board of directors may be called by the president or the secretary on one (1) day's notice to each director, either personally, by mail, by telegram, facsimile transmission or by telephone; special meetings shall be called by the president or secretary in like manner and on like notice on the written request of one (1) or more directors.

H.     Quorum.   Fifty-one percent (51%) of the membership of the board of directors shall constitute a quorum and the concurrence of fifty-one percent (51%) of those present shall be sufficient to conduct the business of the board, except as may be otherwise specifically provided by statute or by the Articles of Incorporation.   If a quorum shall not be present at any meeting of the board, the directors then present may adjourn the meeting to another time or place, without notice other than announcement at the meeting, until a quorum shall be present.

I.     Action Without Meeting.   Unless otherwise restricted by the Articles of Incorporation or these Bylaws, any action required or permitted to be taken at any meeting of the board of directors or of any committee thereof may be taken without a meeting, if all members of the board or committee, as the case may be, consent thereto in writing, and the writing or writings are filed with the minutes of proceedings of the board or committee.

- 6 -

J.    Compensation. The directors may be paid their expenses, if any, of attendance at each meeting of the board of directors and may be paid a fixed sum for attendance at each meeting of the board or a stated salary as director. No such payment shall preclude any director from serving the corporation in any other capacity and receiving compensation therefor. Members of special or standing committees may be allowed like compensation for attending committee meetings. The amount or rate of such compensation of members of the board or of committees shall be established by the board and shall be set forth in the minutes of the board.

K.    Waiver of Notice. Attendance by a director at a meeting shall constitute waiver of notice of such meeting, except when the person attends the meeting for the express purpose of objecting to the transaction of any business because the meeting is not lawfully called or convened. Any director may waive notice of any annual, regular or special meeting of directors by executing a written notice of waiver either before or after the time of the meeting.

## ARTICLE IV

### OFFICERS

A.    Designation of Titles. The officers of the corporation shall be chosen by the board of directors and shall be a president, a vice president, a secretary and a treasurer. The board may also choose a chairman of the board, additional vice presidents and one or more assistant secretaries and assistant treasurers. Any number of offices, may be held by the same person, unless the Articles of Incorporation or these Bylaws provide otherwise.

B.    Appointment of Officers. The board of directors at its first meeting after each annual meeting of shareholders shall choose a president, one or more vice presidents, a secretary and a treasurer and may choose a chairman of the board, each of whom shall serve at the pleasure of the board. The board at any time may appoint such other officers and agents as it

- 7 -

shall deem necessary to hold offices at the pleasure of the board and to exercise such powers and perform such duties as shall be determined from time to time by the board.

C.     Salaries. The salaries of the officers shall be fixed from time to time by the board of directors, and no officer shall be prevented from receiving such salary by reason of the fact that he is also a director of the corporation. The salaries of the officers or the method by which salaries are fixed shall be set forth in the minutes of the meetings of the board.

D.     Vacancies. A vacancy in any office because of death, resignation, removal, disqualification, or otherwise, may be filled by the board of directors at any time.

E.     Chairman of the Board. The chairman of the board, if one shall have been appointed and be serving, shall preside at all meetings of the board of directors and shall perform such other duties as from time to time may be assigned to him.

F.     President. The president shall preside at all meetings of shareholders, and if a chairman of the board shall not have been appointed or, having been appointed, shall not be serving or be absent, the president shall preside at all meetings of the board of directors. He shall sign all deeds and conveyances, all contracts and agreements and all other instruments requiring execution on behalf of the corporation, and shall act as operating and directing head of the corporation, subject to policies established by the board.

G.     Vice Presidents. There shall be as many vice presidents as shall be determined by the board of directors from time to time, and they shall perform such duties as from time to time may be assigned to them. Any one of the vice presidents, as authorized by the board, shall have all the powers and perform all the duties of the president in case of the temporary absence of the president or in case of his temporary inability to act. In case of the permanent absence or

- 8 -

inability of the president to act, the office of president shall be declared vacant by the board and a successor chosen by the board.

H.     Secretary.   The secretary shall see that the minutes of all meetings of shareholders, of the board of directors and of any standing committees are kept.  He shall be the custodian of the corporate seal and shall affix it to all proper instruments when deemed advisable by him.  He shall give or cause to be given required notices of all meetings of the shareholders and of the board.  He shall have charge of all the books and records of the corporation, except the books of account, and in general shall perform all the duties incident to the office of secretary of a corporation and such other duties as may be assigned to him.

I.     Treasurer.  The treasurer shall have general custody of all the funds and securities of the corporation except such as may be required by law to be deposited with any state official. He shall see to the deposit of the funds of the corporation in such bank or banks as the board of directors may designate.   Regular books of account shall be kept under his direction and supervision, and he shall render financial statements to the president, directors and shareholders at proper times.   The treasurer shall have charge of the preparation and filing of such reports, financial statements and returns as may be required by law.  He shall give to the corporation such fidelity bond as may be required, and the premium therefor shall be paid by the corporation as an operating expense.

J.     Assistant Secretaries.  There may be such number of assistant secretaries as from time to time the board of directors may fix, and such persons shall perform such functions as from time to time may be assigned to them.  No assistant secretary shall have the power or authority to collect, account for or pay over any tax imposed by any federal, state or city government.

- 9 -

K.     Assistant Treasurers.  There may be such number of assistant treasurers as from time to time the board of directors may fix, and such persons shall perform such functions as from time to time may be assigned to them.  No assistant treasurer shall have the power or authority to collect, account for, or pay over any tax imposed by any federal, state or city government.

## ARTICLE V

## CORPORATE SEAL

A corporate seal shall not be requisite to the validity of any instrument executed by or on behalf of the corporation; however if, in any instance, a corporate seal is used, the same shall be either (a) a circle having on the circumference thereof the name of the corporation and in the center the words "Corporate Seal" and the year and state of incorporation, or (b) a circle containing the words "Corporate Seal" on the circumference thereof.

## ARTICLE VI

## REPEAL, ALTERATION OR AMENDMENT

These Bylaws may be repealed, altered or amended, or substitute Bylaws may be adopted, at any time only by fifty-one percent (51%) of the board of directors.

DATED:  July 20 , 2015.

_____
William Sheridan, President

ATTEST:

_____
Osvaldo Arias, Secretary

# EXHIBIT "2"

FIASCO ENTERPRISES INC.
BUY-SELL/STOCK REDEMPTION AGREEMENT

THIS AGREEMENT is entered into this 20ᵗʰ day of July, 2015, by and between FIASCO ENTERPRISES INC., an Arizona corporation (hereinafter the "Corporation"), WILLIAM SHERIDAN, PABLO FRANCO, OSVALDO ARIAS, MATTHEW ROHASEK, WENDY LOMBARDI, DANNY FOWLER, TINA RIFE, JOHN MEZA, JESSIE GARCIA, REBECCA MEGALLON, RICHARD BELLOMO, and JACOB J. VEGA (hereinafter the "Shareholders").

RECITALS

1.     The number of shares held by the Shareholders are as follows:

| | |
|---|---|
| William Sheridan | 15,215 Shares |
| Pablo Franco | 15,215 Shares |
| Osvaldo Arias | 15,215 Shares |
| Matthew Rohasek | 15,215 Shares |
| Wendy Lombardi | 7,610 Shares |
| Danny Fowler | 6,390 Shares |
| Tina Rife | 5,330 Shares |
| John Meza | 4,570 Shares |
| Jessie Garcia | 3,810 Shares |
| Rebecca Megallon | 3,810 Shares |
| Richard Bellomo | 3,810 Shares |
| Jacob J. Vega | 3,810 Shares |

2.     The parties desire to ensure the continuity of the management of the Corporation upon the withdrawal, permanent disability, full retirement or death of any of the Shareholders (referred to collectively as termination of employment).

3.     The parties also desire to create an equitable arrangement for the transfer of stock by a Shareholder to third parties.

AGREEMENT

ARTICLE I

DEFINITIONS

A.     "Withdrawal" shall be deemed to occur upon a Shareholder's termination of employment with the Corporation for reasons other than permanent disability, full retirement or death.

B.     "Permanent Disability" shall be deemed to be illness or disability of a nature which prevents a Shareholder from performing continuous service for the Corporation as an employee on a permanent basis for more than six (6) months and as determined by either (i) the

Department of Social Security of the United States; or (ii) the insurance company through which the Corporation carries disability or wage continuation insurance on the employees; or (iii) the attending physician of the employee as evidenced by a written opinion of such physician delivered to the Corporation, and confirmed by a written opinion of an independent physician employed by the Corporation to examine the employee as to his physical condition and disability to perform services for the Corporation.

     C.    "Full Retirement" shall occur when a Shareholder reaches age seventy (70) or sooner if the Shareholder voluntarily retires at age fifty-five (55) or more.

     D.    "Net Book Value" shall mean the net book value of the Corporation calculated on the accrual basis excluding accounts receivable and life insurance proceeds. The net book value shall be calculated as of the end of the month of the triggering event by the accountant for the Corporation.

ARTICLE II

RESTRICTIONS ON TRANSFER

     A Shareholder shall be permitted to transfer or assign his shares in the Corporation only as provided in this Agreement. Any attempt to sell, transfer or gift shares is void.

ARTICLE III

REDEMPTION OF STOCK UPON DEATH,
PERMANENT DISABILITY, WITHDRAWAL OR FULL RETIREMENT

     Upon a Shareholder's death, permanent disability, withdrawal or full retirement, all of the shares owned by him shall be sold and purchased as follows:

     A.    Purchase. The Corporation shall purchase from the Shareholder and the Shareholder shall sell to the Corporation all of the shares owned by the Shareholder at the price set forth in paragraph C of this article and in the manner set forth in paragraph D of this article.

     B.    Closing. Closing of the purchase and sale shall take place at the office of the Corporation, or at such other place as the parties shall agree, at a date designated by the Corporation which shall not be more than ninety (90) days following the date of the Shareholder's death, permanent disability, withdrawal or full retirement.

     C.    Purchase Price. The value of the Shareholder's interest in the Corporation shall be computed by multiplying his proportionate interest in the outstanding stock of the Corporation times the Net Book Value of the Corporation, as defined in Article I, Paragraph B.

     D.    Payment of Purchase Price. The purchase price for the stock shall be paid in full at closing.

## ARTICLE IV

### INSURANCE

The Corporation may carry insurance on the life of any Shareholder, naming itself as beneficiary of the policies, in such amounts as the board of directors shall consider advisable. The Corporation shall pay all premiums on insurance policies taken out by it pursuant to this Agreement.

## ARTICLE V

### TERMINATION OF AGREEMENT

This Agreement shall terminate upon the occurrence of any of the following events:

A.     Adjudication of the Corporation as a bankrupt, execution by it of any assignment for the benefit of its creditors, or the appointment of a receiver for the Corporation.

B.     Voluntary agreement of all parties who are then bound by the terms of this Agreement.

C.     Upon termination of this Agreement, each Shareholder shall surrender to the Corporation his certificates in exchange for an equal number of shares without the endorsement set forth in paragraph B of Article VIII.

## ARTICLE VI

### INTEREST OF SPOUSES IN STOCK

A.     Signature of Spouse. If a Shareholder is married at the time he signs this Agreement, the Agreement must also be signed by the Shareholder's spouse. The spouse's signing of this Agreement shall constitute acceptance of all of its terms, including those of this article. If a non-married Shareholder marries, the Shareholder shall cause his spouse to execute this Agreement.

B.     Management and Control. Insofar as the Corporation and any other Shareholder are concerned, the stock in the sole name of a Shareholder shall be deemed to be his separate property, and the Shareholder shall have sole management and control over the stock, including the right to vote or sell the stock. This paragraph is not intended to and shall not affect the community property interests that the spouse may have in the stock.

C.     Death of Shareholder. In the event that a Shareholder predeceases his spouse, and the spouse has a community property interest in the stock registered in the sole name of the Shareholder, all of the stock shall be deemed to be included in the probate estate of the deceased Shareholder for purposes of the buyout provisions of this Agreement. This paragraph shall not affect any community property interest that the spouse may have in the proceeds from the purchase of the stock.

- 3 -

D.    Death of a Shareholder's Spouse.  In the event that the spouse of a Shareholder shall predecease the Shareholder and the spouse has a community property interest in the stock registered in the sole name of the Shareholder, the Shareholder shall continue to own all of the shares of stock issued to him. Spouse shall duly implement this provision by providing in his/her will for the devise of his/her interest in the stock to the Shareholder.  In the event that the community property interest of the spouse in the stock does not pass entirely to the Shareholder by intestate succession or through the spouse's will, then the Shareholder and the spouse shall be deemed to have owned such stock not as community property and not as tenants in common, but as joint tenants with the right of survivorship.

E.    Divorce.  In the event that a Shareholder's spouse owns a community property interest in the stock registered in the sole name of a Shareholder, and the marriage is dissolved otherwise than by death, all of the ownership interest in the stock shall pass to the Shareholder upon such dissolution.  Shareholder and spouse shall duly effectuate this provision in the event of such dissolution by appropriate provision in a property settlement agreement or other like instrument. This paragraph shall not affect any rights the spouse may have (as between the spouse and the Shareholder) as to any benefits receivable as a result of such stock ownership.

## ARTICLE VII

### JURY WAIVER

The parties hereby voluntarily, knowingly, irrevocably and unconditionally waive any right to have a jury participate in resolving any dispute (whether based upon contract, tort or otherwise) between or among the parties arising out of or in any way related to this agreement or any relationship between the parties. This provision is a material inducement to each party to enter into this agreement.

## ARTICLE VIII

### MISCELLANEOUS

A.    Future Shareholders.  This Agreement or a similar agreement shall be executed by each future Shareholder, and approved in writing by a spouse if required under Article VI of this Agreement, at or prior to a time Shareholder acquires stock of the Corporation.

B.    Endorsement of Stock Certificates.  Each certificate representing shares of the capital stock of the Corporation now or hereafter held by the Shareholders shall be inscribed substantially as follows:

> This stock is restricted pursuant to the Bylaws of the Corporation or in a separate written agreement.  A copy of such restrictions shall be mailed to a requesting Shareholder without charge within five (5) days of receipt of written request therefore.

- 4 -

> Transfer of this certificate is prohibited except upon determination by the board of directors of the corporation that such transfer will not void or endanger the corporation's election to be taxed pursuant to subchapter S of the Internal Revenue Code. In any case, any transferee shall agree to be bound by the Election and by such transfer restrictions.

C.     Notices. Any notice hereunder shall be given in writing and transmitted by registered or certified mail, postage prepaid, and shall be deemed given upon the date postmarked. All notices shall be addressed, in the case of the Corporation to its principal office, and in the case of any Shareholder to his address appearing on the stock books of the Corporation, or his residence, or to such other address as may be designated by him.

D.     Breach - Equitable Relief. The parties acknowledge that the Corporation stock described in this Agreement is unique and money damages alone for breach of this Agreement are inadequate. Any party aggrieved by a breach of any of the provisions of this Agreement may bring an action at law or a suit in equity to obtain redress, including specific performance injunctive relief, or any other available equity or remedy. Time and strict performance are of the essence in this Agreement.

E.     Authorization. The Corporation is authorized to enter into this Agreement by virtue of a resolution adopted at a meeting of the directors held _July 20_, 2015.

F.     Attorney's Fees. Any party who commences or defends an action against the other to enforce any of the terms of this Agreement or because of a breach by either party of any of its terms, and is successful in such prosecution or defense shall recover from the losing or defaulting party reasonable attorney's fees, costs and expenses incurred in connection with the prosecution or defense of such action.

G.     Arizona Law to Apply. This Agreement shall be governed by the laws of the state of Arizona and any questions arising under this Agreement shall be construed or determined according to such law.

H.     Binding Effect. This Agreement is binding upon the heirs, personal representatives, administrators and successors of the respective parties.

I.     Gender and Number. Whenever used in this Agreement, the singular shall include the plural and the plural shall include the singular, the male shall include the female gender and a trust, partnership, firm, company or Corporation, all as the context and meaning of this Agreement require.

J.     Entire Agreement; Amendment. This Agreement contains all of the agreements of the parties with respect to the matters contained herein and no prior agreement or understanding pertaining to any such matter shall be effective for any purpose. No provision of this Agreement may be amended or added except by an agreement in writing signed by the parties and their respective successors.

K.     Counterparts. This Agreement may be executed in counterparts and shall be effective as of the date signed by the party last to sign.

- 5 -

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the day and year first above written.

**CORPORATION:**

FIASCO ENTERPRISES INC.,
an Arizona corporation

By: _____
William Sheridan
President

By: _____
Osvaldo Arias
Secretary

*[Signatures of Shareholders and Spouses Continue on the following page]*

- 6 -

**SHAREHOLDERS:**

_____
William Sheridan

_____
Osvaldo Arias

_____
Wendy Lombardi

_____
Tina Rife

_____
Jessie Garcia

_____
Richard Bellomo

_____
Pablo Franco

_____
Matthew Rohasek

_____
Danny Fowler

_____
Jon Meza

_____
Rebecca Megallon

_____
Jacob J. Vega

**SPOUSES:**

_____
Liborada Sheridan

_____
Kim Rohasek

_____
Yadira Garcia

_____
Fabiola Franco

_____
Randy Rife

_____
Victoria Bellomo

# EXHIBIT 2

# EXHIBIT 2

1   **Marquis Aurbach Coffing**
2   Erik W. Fox, Esq.
    Nevada Bar No. 8804
3   10001 Park Run Drive
    Las Vegas, Nevada 89145
4   Telephone: (702) 382-0711
    Facsimile: (702) 382-5816
5   efox@maclaw.com
    Attorneys for Plaintiff

6                           **DISTRICT COURT**

7                      **CLARK COUNTY, NEVADA**

8   OSVALDO ARIAS,

9                         Plaintiff,          Case No.:    A-16-734939-C
                                              Dept. No.:   XXVIII
10        vs.

11  FIASCO ENTERPRISES, INC.; DOES I through
    X, inclusive; and ROE CORPORATIONS I
12  through X, inclusive,

13                        Defendants.

14

15                          **SUMMONS - CIVIL**

16  **NOTICE!  YOU HAVE BEEN SUED. THE COURT MAY DECIDE AGAINST YOU WITHOUT YOUR BEING HEARD UNLESS YOU RESPOND WITHIN 20 DAYS. READ THE INFORMATION BELOW.**

17                     **FIASCO ENTERPRISES, INC.**

18      **TO THE DEFENDANT(S):** A civil Complaint has been filed by the Plaintiff(s) against

19  you for the relief set forth in the Complaint.

20      1.      If you intend to defend this lawsuit, within 20 days after this Summons is served

21              on you, exclusive of the day of service, you must do the following:

22          (a)     File with the Clerk of this Court, whose address is shown below, a formal

23                  written response to the Complaint in accordance with the rules of the

24                  Court, with the appropriate filing fee.

25          (b)     Serve a copy of your response upon the attorney whose name and address

26                  is shown below.

27

28

                          Page 1 of 2

                                          MAC:14383-001 2773304_1 4/13/2016 10:46 AM

32453.1

*(left margin, vertical text)* MARQUIS AURBACH COFFING  10001 Park Run Drive  Las Vegas, Nevada 89145  (702) 382-0711 FAX: (702) 382-5816

2.   Unless you respond, your default will be entered upon application of the Plaintiff(s) and failure to so respond will result in a judgment of default against you for the relief demanded in the Complaint, which could result in the taking of money or property or other relief requested in the Complaint.

3.   If you intend to seek the advice of an attorney in this matter, you should do so promptly so that your response may be filed on time.

4.   The State of Nevada, its political subdivisions, agencies, officers, employees, board members, commission members and legislators each have 45 days after service of this Summons within which to file an Answer or other responsive pleading to the Complaint.

STEVEN D. GRIERSON
CLERK OF COURT

APR 1 3 2016

By _____
Deputy Clerk                              Date
Regional Justice Center  MADELINE BELSEY
200 Lewis Avenue
Las Vegas, NV 89155

Issued at the direction of:

MARQUIS AURBACH COFFING

By _____
Erik W. Fox, Esq.
Nevada Bar No. 8804
10001 Park Run Drive
Las Vegas, Nevada 89145
Telephone: (&02) 382-0711
Attorneys for Plaintiff

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

Page 2 of 2

MAC:14383-001 2773304_1 4/13/2016 10:46 AM

JS 44 (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
OSVALDO ARIAS

**DEFENDANTS**
FIASCO ENTERPRISES, INC.; DOES I-X, inclusive; and ROE CORPORATIONS I-X, inclusive

**(b)** County of Residence of First Listed Plaintiff     Clark
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Erik W. Fox, Esq.
MARQUIS AURBACH COFFING, 10001 Park Run Drive
Las Vegas, NV 89145 - Phone: (702) 382-0711

Attorneys *(If Known)*
Mark E. Konrad, Esq. / Jeff Willis, Esq. / Charles E. Gianelloni, Esq.
SNELL & WILMER L.L.P., 3883 Howard Hughes Parkway, Suite 1100
Las Vegas, NV 89169 - Phone: (702) 784-5200

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government Plaintiff
- ☐ 2  U.S. Government Defendant
- ☐ 3  Federal Question *(U.S. Government Not a Party)*
- ☒ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☐ 1  Original Proceeding
- ☒ 2  Removed from State Court
- ☐ 3  Remanded from Appellate Court
- ☐ 4  Reinstated or Reopened
- ☐ 5  Transferred from Another District *(specify)*
- ☐ 6  Multidistrict Litigation

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. §§ 132,141, 1446
Brief description of cause:
Plaintiff seeks declaratory relief related to redemption of its shares in Fiasco Enterprises

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

**DEMAND $**
>$75,000

CHECK YES only if demanded in complaint:
JURY DEMAND:    ☐ Yes    ☒ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

DATE
May 6, 2016

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____